# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 14, 2012

## STATE OF TENNESSEE v. RANDY PARHAM

**Appeal from the Criminal Court for Shelby County**
**No. 08-07474     J. Robert Carter, Jr., Judge**

---

**No. W2011-01276-CCA-R3-CD  - Filed September 26, 2012**

---

A Shelby County jury convicted the Defendant-Appellant, Randy Parham, of attempted first degree murder, a Class A felony, aggravated robbery, a Class B felony, theft of property valued at $1000 or more but less than $10,000, a Class D felony, and domestic assault, a Class A misdemeanor.  On remand for resentencing following Parham's first appeal, State v. Randy Parham, No. W2009-02576-CCA-R3-CD, 2010 WL 5271612 (Tenn. Crim. App. Dec. 10, 2010), the trial court imposed an effective sentence of fifty-five years.  In this appeal, Parham argues that the trial court erred by (1) ordering the sentences for attempted first degree murder and aggravated robbery to be served consecutively, (2) ordering the sentence for attempted first degree murder to be served at one hundred percent release eligibility as a "violent" offense, and (3) failing to state on the record which enhancement factors it applied to which offenses while at the same time applying a non-statutory enhancement factor.  Upon review, we affirm the judgments of the trial court in part and reverse them in part.  We also note the need for entry of corrected judgments.  The case is remanded for entry of judgments in accordance with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court
are Affirmed in Part and Reversed in Part; Case Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Stephen C. Bush, District Public Defender; Tony N. Brayton (on appeal) and Jim Hale (at trial), Assistant Public Defenders, Memphis, Tennessee, for the Defendant-Appellant, Randy Parham.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and David Zak, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Background.** On Parham's first appeal, this court summarized the proof at trial:

This case arises out of the defendant's April 10, 2008, violent beating of his ex[-]girlfriend, Joyce Marable, and theft of her money, jewelry, and vehicle. At the defendant's trial, the victim testified that she and the defendant had been in a relationship for over a year and had lived together for approximately six months but that they had broken up and the defendant had moved out of her Memphis home by the time of the April 10, 2008 incident. She said that the defendant called her that morning to ask if he could stop by to retrieve his belongings and she agreed. The defendant arrived at about 4:00 that afternoon, and she went downstairs and admitted him into the house. He asked for a glass of water, and she told him that he knew where the kitchen was. The victim stated that she had gone back upstairs to gather the defendant's belongings when she heard the defendant running up the steps, turned around, and found him standing behind her with his hands behind his back.

The victim testified that the defendant told her that she had been "playing with him too much" and that he had come to kill her. She asked him to leave, and he repeated that he had come to kill her, adding that he was "for real." The defendant then brought from behind his back a fireplace log and began beating the victim in the head with it. The victim said that blood was running down her head as she backed away from the defendant and begged him to stop. The defendant, however, continued to beat her about the head. She then turned to run but slipped and fell onto the floor in her bedroom. As she lay on the floor with her arms covering her head and pleading for him to stop, the defendant continued to beat her, saying, "Bitch, you need to not ask me please stop, you need to ask God to let you go to heaven, not hell . . . [b]ecause you going to join your dead ass mom there."

After beating her for a while, the defendant asked the victim where her purse and jewelry were located. She told him that her purse was hanging on the door and her jewelry was in her jewelry cleaner, and the defendant then dumped the contents of her purse and jewelry cleaner onto her bed and took her cash and jewelry before returning to her and resuming the beating. The victim stated that the beating continued for approximately one more minute until she closed her eyes and lay still as if she were "drifting off." At that

-2-

point, the defendant stopped, ran down the stairs, and departed in her truck. When he was gone, she struggled to her feet, slid down the steps to the entrance hall, and made her way outside, where she was able to attract the attention of her neighbors before she lapsed into unconsciousness.

The victim testified that a nurse who treated her at the hospital told her that she was lucky to be alive because she had lost so much blood. She said she had bruises all over her body, two broken arms, a broken wrist, three broken fingers, and a gash to the back of the head that required more than twenty stitches. She stated that she went to physical therapy after her casts were removed but nonetheless suffered permanent damage in the form of a loss of strength to her right hand and the inability to completely straighten her right arm.

The victim was unable to say exactly how long the beating lasted or how many times the defendant hit her. She testified, however, that the defendant hit her so many times and so violently that a piece of the log broke off and "was sticking in [her] head." According to her testimony, the defendant had retrieved the log from the fireplace in her downstairs den. She said that her truck, which was worth over $1000, was recovered on April 12, 2008, when the police arrested the defendant in the vehicle in an area of Memphis "off of Bellevue and McLemore."

On cross-examination, the victim denied that she and the defendant argued before the assault occurred. She repeated that the defendant arrived at her home at 4:00 p.m. and estimated that the entire episode lasted approximately seven minutes. She acknowledged, however, that she might have told a police officer that the assault occurred at 5:30 p.m.

Memphis Police Officer Francis Johnson responded to the scene to find the victim, who was "bleeding profusely," sitting outside her house rocking back and forth and moaning while a neighbor held a towel to the back of her head. Blood was "st[r]eaming down" the back of the victim's neck, and the victim informed the officer that her boyfriend had hit her numerous times in the back of the head with a fireplace log. The victim also reported that the defendant said during the beating that she was going to meet her mother, which frightened her. When Officer Johnson asked why that statement had frightened her, the victim explained that her mother was already dead. Officer Johnson testified that the victim told him that the defendant had taken $150 in cash and the keys to her Oldsmobile Bravada from her purse and had driven

off in her vehicle. On cross-examination, Officer Johnson acknowledged that the victim told him that she and the defendant had been arguing before the attack.

Sergeant Morley Wright of the Memphis Police Department's Crime Scene Investigation Unit identified the fireplace log with blood spatter on it, which was admitted as an exhibit and published to the jury.

Cornette Irby, an employee of a Cash America Pawn store located on Park Avenue, testified that on April 11, 2008, an individual using the defendant's identification pawned a ladies' fashion ring for $120. She was unable to locate the pawn ticket but was able to retrieve the transaction information from the store's computer system. Mark Burnett, an employee of another Memphis Cash America Pawn store located on South Third Street, testified that on that same date, an individual using the defendant's identification pawned a ladies' fashion ring for $150 at the South Third store. Burnett identified the pawn ticket from that transaction, which included a fingerprint of the individual who had pawned the item.

Sergeant Michael Freeman of the Memphis Police Department's Burglary Bureau, who was assigned to pawnshop detail, testified that he discovered that the defendant had pawned two rings at two different locations and went to the stores and picked up the rings, which he then tagged into evidence.

Sergeant Anthony Davis of the Memphis Police Department's Domestic Violence Unit testified that the victim identified the rings retrieved from the pawnshops as her stolen jewelry.

Linda Seldon, a fingerprint examiner with the Shelby County Sheriff's Department, testified that she compared the fingerprint on the pawn ticket to a set of the defendant's fingerprints but, due to the print's poor quality, was unable to either exclude or include the defendant as the source of the print.

The defendant elected not to testify and rested his case without presenting any proof.

Id. at *1-3.

In Parham's first appeal, he asserted that (1) the evidence was insufficient to support his convictions, (2) the trial court failed to merge the domestic assault conviction with the attempted first degree murder conviction and the theft conviction with the aggravated

-4-

robbery conviction, and (3) the trial court failed to consider enhancement and mitigating factors when it decided the length of Parham's sentence or to make adequate findings of fact in ordering consecutive sentences. Id. at *1, 7. Although this court concluded that the evidence was sufficient to support the convictions, we merged the domestic assault conviction into the attempted first degree murder conviction. We also determined that the trial court erred by failing to make adequate findings to support its sentencing determinations, and we remanded for resentencing for the trial court to place on the record its findings to support the length of Parham's sentences and the order of consecutive sentencing. Id. at *1.

At the resentencing hearing, the parties stated that they wished to rely on the record of the initial sentencing hearing, and the court heard no additional evidence or argument.[1] The court stated that Parham was a Range II offender and sentenced him to serve eight years for the theft conviction. For the aggravated robbery offense, the court imposed a sentence of fifteen years, to be served concurrently with the theft offense. The court stated that "[i]n the criminal attempt murder first degree, I do find that these enhancements are significant," and it sentenced Parham to forty years.

The court considered the appropriateness of consecutive sentencing:

In looking at the considerations for – under Gray v. State[, 538 S.W.2d 391 (Tenn. 1976),] and all its progeny to determine whether or not the defendant's sentence should be served consecutively, I do absolutely find that he is a horrifically violent offender.

He has committed a prior murder. . . .

You know, if you take a gun and you can squeeze a trigger and try to kill somebody, and then, the moment that it's done, you might feel some remorse or something, it can be done in such an instant.

But to take a piece of firewood and beat someone repeatedly while telling them that you're going to send them to be with their dead mother, and continue to beat them and stop and come back and beat them some more, and only stop when you think you've accomplished what you set out to do, which

_____

[1] As we will explain, we have elected to take judicial notice of the appellate record from Parham's first appeal, which included the initial sentencing hearing transcript. No proof was offered at the initial sentencing hearing.

is to kill them, I find to be . . . one of the most horrific forms of injury that a person can undergo.

The court ordered that the forty-year sentence for attempted first degree murder be served consecutively to the fifteen-year sentence for aggravated robbery. Regarding the resulting effective sentence of fifty-five years, the court stated, "I find that to be the absolute minimum sentence necessary to protect this community from further violence from Mr. Parham and also to avoid depreciating the seriousness of the crimes that Mr. Parham has been convicted of." The court further stated that attempted first degree murder was "a hundred percent crime" and ordered Parham to serve the forty-year sentence at one hundred percent release eligibility. It ordered him to serve the fifteen-year sentence at thirty-five percent release eligibility. This timely appeal followed.

## ANALYSIS

**Standard of Review.** On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2010). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant has the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d), Sentencing Comm'n Comments. If the trial court followed the statutory sentencing procedure, made adequate findings of fact that are supported by the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the sentencing act, this court may not disturb the sentence even if a different result was preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In a case where "the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008) (citing State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). Because the trial court in this case did not properly follow the sentencing act, as discussed below, our review is de novo without a presumption of correctness. See Ashby, 823 S.W.2d at 169.

In our de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, (7) any statistical information as to sentencing practices for similar offenses in the state, and (8) the defendant's potential for rehabilitation or

-6-

treatment.  T.C.A. §§ 40-35-102, -103, -210; <u>see</u> <u>Ashby</u>, 823 S.W.2d at 168; <u>State v. Moss</u>, 727 S.W.2d 229, 236-37 (Tenn. 1986).

Before addressing the merits of Parham's appeal, we note that the record does not include the trial transcript, the transcript from the first sentencing hearing, or the presentence investigation report, all of which are relevant to the trial court's findings.  Although the aforementioned transcripts and the presentence investigation report were not included in the record on appeal, they are part of the appellate record from Parham's first appeal. Consequently, we elect to take judicial notice of the appellate record from the first appeal, thereby allowing us to consider Parham's issues on their merits.  <u>See</u> <u>Delbridge v. State</u>, 742 S.W.2d 266, 267 (Tenn. 1987).

**I.  <u>Consecutive Sentencing.</u>**  Parham argues that the trial court erred in ordering the sentence for attempted first degree murder to be served consecutively to the other sentences. He asserts that the trial court "failed to articulate the aggravating circumstances which would justify consecutive sentences in this case and . . . failed to comply with the statutory principles of consecutive sentencing by ensuring that the aggregated sentence is the least severe measure necessary to protect society from the defendant's future criminal conduct." The State responds that the trial court properly ordered consecutive sentencing in this case. We agree with the State.

When a defendant is convicted of one or more offenses, the trial court generally has discretion to decide whether the sentences shall be served concurrently or consecutively. T.C.A. § 40-35-115(a), (b); T.C.A. § 40-35-115(d), Sentencing Commission Comments ("[W]hile consecutive sentences are discretionary, in a few instances, consecutive sentences are mandated either by statute or by Tenn. R. Crim. P. 32.").  A trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence that a defendant fits into at least one of seven categories enumerated in section 40-35-115(b):

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or

no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b). Furthermore, an order of consecutive sentencing must be "justly deserved in relation to the seriousness of the offense," T.C.A. § 40-35-102(1), and the length of a consecutive sentence must be "no greater than that deserved for the offense committed," T.C.A. § 40-35-103(2).

At the second sentencing hearing, the parties stated that they wished to rely on the record of the first sentencing hearing. Our review of the transcript from the first sentencing hearing shows that although the parties presented arguments, no proof was offered. During the first sentencing hearing, the State noted that it had previously filed a motion for consecutive sentencing and a memorandum of law in support of that motion, wherein it argued that Parham was an offender whose record of criminal activity was extensive and that Parham was a dangerous offender whose behavior indicated little or no regard for human life, and no hesitation about committing a crime in which the risk to human life was high. T.C.A. § 40-35-115(b)(2), (4). Defense counsel responded that Parham's record, which included a Class A felony and a Class C felony as well as several misdemeanors, was not "per se extensive," although he acknowledged that Parham had been convicted of second degree murder and that less extensive criminal records than Parham's had been used to impose consecutive sentencing for other defendants. He also acknowledged that Parham was a Range II offender and that no mitigating factors applied in this case. Additionally, defense counsel asserted that although Parham had been convicted of several offenses, these offenses were "all part and parcel of one big act" against the victim. The State then argued that Parham had spent "more time in jail th[a]n not" and that he had "never successfully completed any type of probation or parole[.]" It also opined that Parham was a poor candidate for rehabilitation and would "hurt others if ever allowed out of jail." Although the State noted Parham's "extensive criminal history" in its argument for consecutive sentencing,

it did not specifically argue for the application of any enhancement factors. Defense counsel replied that consecutive sentencing was unnecessary because Parham would be older and "not a threat to the public" after serving the sentence for the attempted first degree murder conviction.

Because the parties relied on the record from the first sentencing hearing, the court heard no evidence and no additional argument at the second sentencing hearing. Therefore, the parties' arguments regarding the enhancement and mitigating factors and consecutive sentencing were the same at the resentencing hearing as they were at the initial sentencing hearing.

At the second sentencing hearing, the trial court ordered consecutive sentencing based on a finding that Parham is "a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high" under section 40-35-115(b)(4).[2] During the sentencing hearing, the court summarized the nature of the attack in which Parham repeatedly bludgeoned the victim with a log, told her he planned to kill her, stole her personal items and car, and then brazenly pawned the stolen items. It determined that the aggregate sentence of fifty-five years was "the absolute minimum sentence necessary to protect this community from further violence from Mr. Parham and also to avoid depreciating the seriousness of the crimes that Mr. Parham has been convicted of."

After reviewing the first and second sentencing hearings, as well as the trial transcript and the presentence investigation report, we conclude that the record supports the trial court's imposition of consecutive sentencing based on its finding that Parham is a dangerous offender under section 40-35-115(b)(4). Regarding this subsection, the Tennessee Supreme Court has stated:

> "Proof that an offender's behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high, is proof that the offender is a dangerous offender, but it may not be sufficient to sustain consecutive sentences. Every offender convicted of two or more dangerous crimes is not a dangerous offender subject to consecutive sentences; consequently, the provisions of [s]ection 40-35-115 cannot be read

---

[2]Although the trial court, in ordering consecutive sentences, stated that Parham is "a horrifically violent offender," the parties both treat this as a finding that Parham is a dangerous offender under section 40-35-115(b)(4). Such a conclusion is supported by the trial court's finding of the similar enhancement factor that "the defendant had no hesitation about committing a crime when the risk to human life was high." T.C.A. § 40-35-114(10).

in isolation from the other provisions of the Act.  <u>The proof must also establish that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender.</u>"

State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002) (quoting State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn.1995)).  Unlike the other six subsections, the trial court must make additional factual findings for the "dangerous offender" subsection because it is "'the most subjective and hardest to apply.'"  Id. (quoting State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999)).

Contrary to Parham's assertion, the record demonstrates that the trial court at the second sentencing hearing made the required additional factual findings regarding the severity of the offenses and the need to protect the public from future acts of the defendant. Moreover, the record shows that the trial court complied with the principle of the sentencing act which requires that "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]"  T.C.A. § 40-35-103(4).  The trial court properly applied this factor.  Accordingly, Parham is not entitled to relief on this issue.

**II.  <u>Release Eligibility Date for Attempted First Degree Murder.</u>**  Parham argues that the trial court erred in ordering him to serve the sentence for attempted first degree murder at one hundred percent release eligibility "as a violent offender."  He contends that "based upon sentencing statutes, his criminal record and the notice filed by the State, [he] should have been sentenced as a Range II[,] multiple offender at [thirty-five percent]."  The State concedes error and agrees that Parham should have been sentenced to serve the sentence as a Range II, multiple offender at thirty-five percent release eligibility.  We agree that the trial court erred in ordering Parham to serve the sentence at one hundred percent release eligibility.

Here, the trial court stated that Parham was a Range II offender and that the offense of attempted first degree murder was "a hundred percent crime."  The judgment for this offense notes that the offense is "violent" and must be served at one hundred percent release eligibility.  We conclude, however, that the trial court erred in classifying attempted first degree murder as "violent" under section 40-35-501(i) because it is not one of the offenses enumerated in that statute.  See T.C.A. § 40-35-501(i).  We additionally note that the judgment for attempted first degree murder classifies Parham as a Range III, persistent offender despite the trial court's statement at the sentencing hearing that Parham was a Range II, multiple offender.  See State v. Crowe, 168 S.W.3d 731, 735 n.1 (Tenn. 2005) ("Generally, when there is a conflict between the judgment of conviction and the transcript

of the proceedings, the transcript controls."). Consequently, we remand the case for entry of an appropriate judgment of conviction for attempted first degree murder.

**III. Enhancement Factors.** Parham argues that the trial court erred "by failing to make separate findings as to which enhancement factors applied to which convictions" and by enhancing Parham's sentences based on an allegedly non-statutory enhancement factor, that the victim suffered permanent injury to her arm. The State concedes that the trial court erred by failing to state which factors applied to each offense, but it maintains that the court was correct to consider the victim's permanent injury. We agree with the State and conclude that the sentences imposed by the trial court were proper.

When sentencing a defendant, "the trial court 'shall consider, but is not bound by' an 'advisory sentencing guideline' that suggests an adjustment to the defendant's sentence upon the presence or absence of mitigating and enhancement factors." Carter, 254 S.W.3d at 344 (quoting T.C.A. § 40-35-210(c) (2010)). The Tennessee Supreme Court further explained the sentencing act:

> [T]he trial court is free to select any sentence within the applicable range so long as the length of the sentence is "consistent with the purposes and principles of [the Sentencing Act]." [T.C.A.] § 40-35-210(d). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," id. § 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," id. § 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," id. § 40-35-103(5).

Id. at 343 (footnote omitted). The court also emphasized the broad discretion the trial court has in sentencing a defendant under this act:

> [A] trial court's weighing of various mitigating and enhancement factors has been left to the trial court's sound discretion. Since the Sentencing Act has been revised to render these factors merely advisory, that discretion has been broadened. Thus, even if a trial court recognizes and enunciates several applicable enhancement factors, it does not abuse its discretion if it does not increase the sentence beyond the minimum on the basis of those factors. Similarly, if the trial court recognizes and enunciates several applicable mitigating factors, it does not abuse its discretion if it does not reduce the sentence from the maximum on the basis of those factors.

Id. at 345. Although a trial court exercises broad discretion in applying enhancement and mitigating factors, it must clearly state for the record which enhancement factors it applies to each offense when a defendant is sentenced for multiple offenses. State v. Chrisman, 885 S.W.2d 834, 839 (Tenn. Crim. App. 1994) (ordering a remand for resentencing after concluding that "this Court is unable to conduct an adequate review" because the trial court "failed to make separate findings as to which enhancement factors applied to which convictions"); T.C.A. § 40-35-210(e) (requiring a trial court to place on the record the enhancement and mitigating factors it considered). Additionally, a trial court's discretionary decision to enhance a sentence may be based only on the factors enumerated in section 40-35-114. State v. Strickland, 885 S.W.2d 85, 89 (Tenn. Crim. App. 1993) (citing State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990), overruled on other grounds by State v. Hooper, 29 S.W.3d 1 (Tenn. 2000)).

Here, the transcript from the second sentencing hearing shows that the trial court applied the following enhancement factors in sentencing Parham:

(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;

. . . .

(5) The defendant treated, or allowed a victim to be treated, with exceptional cruelty during the commission of the offense;

. . . .

(10) The defendant had no hesitation about committing a crime when the risk to human life was high;

(11) The felony resulted in death or serious bodily injury, or involved the threat of serious bodily injury, to another person, and the defendant has previously been convicted of a felony that resulted in death or serious bodily injury;

(12) During the commission of the felony, the defendant intentionally inflicted serious bodily injury upon another person, or the actions of the defendant resulted in the death of, or serious bodily injury to, a victim or a person other than the intended victim[.]

T.C.A. § 40-35-114 (Supp. 2007).

In applying enhancement factor (1), the trial court stated that it was "not going to give that factor large weight [because the record contains] primarily misdemeanor matters that sort of pale in comparison to the matter that he's been convicted of here." The court also applied enhancement factor (5), stating:

> I do think that's technically true. Just to continue beating someone with a log after they're unable to put up any defense and then to stop and tell them that you intend to kill them, and then to continue beating them.
>
> That's – that is in my opinion exceptional cruelty. But I'm not going to give it heavy weight because of the fact that the charge is criminal attempt murder in the first degree.
>
> Inherent in attempting to kill somebody is treating them with a fair amount of cruelty
>
> It's ridiculous to contemplate an uncruel attempted murder.
>
> So, while it does somewhat apply, I'm not going to rely on that.

In applying enhancement factor (10), the trial court noted that Parham had "already been convicted of a murder" in the past and that this factor was "a tremendous enhancing factor in the course of this." It added, "[I]t appears that [Parham] went over to this location, and then once he decided that he was going to commit this murder, it's only by the grace of God that the victim did not die and that he was not successful in his intention." In applying enhancement factor (11), the court reiterated that Parham had previously been convicted of second degree murder in a previous, unrelated case and that he had been convicted in this case of attempted murder in the first degree because the victim miraculously survived. The court also applied enhancement factor (12), asserting, "[Y]ou could attempt to murder someone without inflicting any injury on them, so I do find that it applies. But I'm not sure that I would give it significant weight, because I think that we're sort of splitting hairs here."

The trial court also noted that as a result of Parham's offenses, "the victim suffered permanent impairment" of her right arm. The court said that "relying on the factors that [it] outlined, [it was] going to sentence Mr. Parham first in the theft of property count[.]" It subsequently sentenced Parham to eight years for the theft offense. It then sentenced Parham to fifteen years for the aggravated robbery count and ordered that the theft conviction be served concurrently to the aggravated robbery conviction. Finally, in sentencing Parham to forty years for the attempted first degree murder offense, the trial court found "these enhancements [to be] significant" and noted that "there [was] no mitigation whatsoever[.]"

It ordered that the fifteen-year sentence be served consecutively to the forty-year sentence for attempted first degree murder, for an effective sentence of fifty-five years.

Our review of the record shows that the trial court applied all of the enhancement factors to each of the offenses, even though the trial court apparently placed more emphasis on certain enhancement factors for specific offenses. We must now consider whether the trial court erred in applying all of the enhancement factors to each of the offenses. Given that we are remanding the case to reflect the merger of the domestic violence conviction on the attempted first degree murder judgment of conviction, we will not address whether the enhancement factors were properly applied to the domestic violence conviction. Initially, we conclude that the trial court properly applied enhancement factor (1) to each of the offenses. We also conclude that the trial court properly applied enhancement factor (5) to each of the offenses in light of Parham's repeated blows to the victim and his psychological abuse of the victim during the beating. See State v. Arnett, 49 S.W.3d 250, 258-59 (Tenn. 2001) (recognizing that this enhancement factor can be applied where there is "extensive physical abuse" or "proof of psychological abuse"). However, we conclude that the trial court erred in applying enhancement factor (10) to the aggravated robbery offense. See State v. Hill, 885 S.W.2d 357, 363 (Tenn. Crim. App. 1994) (stating that when a defendant commits an offense with a deadly weapon, the risk to human life and the potential for great injury is inherent in the offense). We also conclude that although the trial court properly applied enhancement factor (11) to the attempted first degree murder offense, see State v. Freeman, 943 S.W.2d 25 (Tenn. Crim. App. 1996) (concluding that the trial court did not err in applying enhancement factor (11) because bodily injury was not an essential element of the offense of attempted second-degree murder with regard to the victim who was actually wounded), the trial court erred in applying this enhancement factor to the aggravated robbery offense because serious bodily injury was an element of this offense, see T.C.A. § 40-35-114 (stating that an enhancement factor may be applied "[i]f appropriate for the offense and if not already an essential element of the offense"). For the same reason, we conclude that the trial court erred in applying enhancement factor (12) to the aggravated robbery offense. See id. Here, the trial court sentenced Parham to the maximum sentence in the range for the attempted first degree murder conviction, to five years below the maximum sentence in the range for the aggravated robbery conviction, and to the maximum sentence in the range for the theft conviction. Although the trial court erred in applying enhancement factors (10), (11), and (12) to the aggravated robbery conviction, we conclude that the sentences imposed for the offenses in this case were proper. See State v. Winfield, 23 S.W.3d 279, 284 (Tenn. 2000) (stating that the trial court's error regarding the application of one or more enhancement factors does not automatically lead to a reduction in the sentence length).

Furthermore, contrary to Parham's assertion, the trial court did not err in considering the permanent injury to the victim's arm. Such a fact is not a non-statutory enhancement

factor, but rather it is relevant to enhancement factors (11) and (12), which both involve "serious bodily injury."  T.C.A § 40-35-114.

Finally, we note several errors in the judgments that neither party raises.  First, the judgments after resentencing do not reflect that the conviction for misdemeanor domestic assault merged into the conviction for attempted first degree murder as this court ordered on the first appeal.  Randy Parham, 2010 WL 5271612, at *1, *7.  On remand, the trial court should reflect the merger on the attempted first degree murder judgment of conviction. Second, the judgments reflect that the sentence for theft of property is to be served concurrently with the sentences for both attempted first degree murder and aggravated robbery.  The sentences for those two offenses, however, were ordered to be served consecutively to each other.  On remand, the trial court should correct the judgments to reflect its order, as stated at the sentencing hearing, that the theft sentence be served concurrently only with the aggravated robbery sentence.  Third, because judgments must include a clear statement of the offense involved, we remand the case so that a statement of the particular conviction offense can be added to each judgment, instead of the cryptic, abbreviated notations.

## CONCLUSION

Upon review, we affirm the trial court regarding consecutive sentencing and the length of each of the sentences.  However, we remand the case for entry of a proper judgment for attempted first degree murder, noting the proper sentencing range and statutory release eligibility date and noting the merger of the domestic violence conviction with the conviction for attempted first degree murder.  We also remand the case for entry of a judgment showing that the sentence for theft is to be served concurrently only with the sentence for aggravated robbery.  Finally, we remand the case so that a statement of the particular conviction offense can be placed on each judgment.

_____
CAMILLE R. McMULLEN, JUDGE